## ÆTNA CASUALTY & SURETY CO. v. HAWN LUMBER CO.

### No. 11200.

Court of Civil Appeals of Texas. Dallas. June 3, 1933.

Rehearing Denied July 15, 1933.

Harold B. Sanders and Harry P. Lawther, both of Dallas, for appellant.

McBride, O'Donnell & Hamilton and R. J. Dixon, all of Dallas, and Bishop & Holland, of Athens, for appellee.

JONES, Chief Justice.

The Malakoff independent school district duly entered into a written contract with C. W. McBride, as contractor, on August 1, 1927, for the erection of a public school building. On August 5, 1927, in conformity with the provisions of article 5160, R. S., McBride duly executed a bond with appellant, Ætna Casualty & Surety Company, as surety, in the required amount of one-half of the contract price, for the faithful performance of the terms of the contract. McBride timely began the construction of the school building, and proceeded therewith under the supervision of W. D. Putterbaugh, the authorized supervisor of such construction, and likewise a member of the school board for the school district. McBride never completed the construction of the building, but on or about December 28, 1927, abandoned his contract, and the school district was compelled to finish the building.

Under the terms of the contract, McBride bound himself to pay for all of the material furnished and for all labor performed in the construction of the building, according to the plans and specifications named in the contract, and one legal effect of the statutory surety bond is to guarantee, to the limit of the bond, that the contractor would pay for all the material furnished and all the labor performed. The school district agreed to pay to McBride, every two weeks during the time the building was in course of construction, 80 per cent. of the estimated value of the work that had been performed at each period of payment, and the school district was to retain the remaining 20 per cent. until after the completion of the building according to the contract plans and specifications.

After the completion of the building, the school district had in its possession the unexpended sum of $5,701.08, which would have belonged to McBride had he completed the building. When McBride abandoned the contract, he was indebted, for labor performed and material furnished, in various sums of money, largely in excess of this unexpended balance.

This suit was originally instituted by I. L. and O. T. Woodward, as claimants against McBride, and against the surety company, as surety on the bond, to recover McBride's alleged indebtedness due them; the other claimants intervened and set up their respective claims. A trial was had and a judgment entered, favorable to plaintiffs and the interveners. The surety company, deeming itself aggrieved by the judgment rendered, appealed, with the result that the judgment of the lower court was affirmed by the Court of Civil Appeals, at Waco, to which court the case had been transferred from this court. A writ of error was granted by the Supreme Court, and, in an opinion written by the Commission of Appeals and adopted by the Supreme Court, the judgment of the Court of Civil Appeals was affirmed in part, and reversed and remanded in part. On motion for rehearing, this judgment was modified in some respects. On the former appeal, the case is styled Ætna Casualty & Surety Company v. Woodward et al. The opinion of the Court of Civil Appeals is reported in 31 S.W.(2d) 679; the opinion of the Commission of Appeals is reported in 36 S.W.(2d) 721; and the opinion on the motion for rehearing is reported in (Com. App.) 41 S.W. (2d) 674. These opinions are referred to for a fuller statement of the case than is herein given.

The parties to this appeal are the Ætna Casualty & Surety Company, appellant, Texas Clay Products Company, appellee, the Hawn Lumber Company, appellee, and Dallas Plumbing Company, an appellant and also an appellee, in that the surety company has appealed from a judgment rendered in favor of Dallas Plumbing Company, granting a part of the relief sought, and a cross-appeal by the plumbing company against the surety company, because of a failure of the judgment to grant all of the relief. These parties will be styled surety company and plumbing company, respectively.

In addition to the judgments rendered against McBride, contractor, in favor of parties not affected by this appeal, the court rendered judgment against the contractor for $3,345.80 in favor of the Hawn Lumber Company, a copartnership; $552.88 in favor of Texas Clay Products Company, a corporation; and $6,786.38 in favor of the Dallas Plumbing Company, a corporation. McBride not having appealed from these judgments, they became final as to him in the trial court, and are not at issue on this appeal.

The court also rendered judgment in the following amounts against the surety company: Hawn Lumber Company, $2.270.17; Texas Clay Products Company, $495.97; and Dallas Plumbing Company, $1,402.20. The judgment in favor of these parties also provided that "all payments when made herein to be also credited on the respective judgments of said parties against C. W. McBride"; also the further provision that the surety company "have judgment over and against C. W. McBride and M. T. Dodd (McBride's guarantor to Surety Company), jointly and severally, for the amounts herein decreed against it in favor of the respective parties herein named, and for all costs adjudged against it." The disposition made by the judgment of the $5,701.08, retained and paid into court by the School District, is also at issue in this case. That portion of the judgment reads:

"And it appearing to the court that there is a fund amounting to $5,701.08 retained by the Malakoff School District subject to be applied pro rata on all judgments rendered against C. W. McBride in this cause, which fund is on deposit in the First National Bank of Malakoff, Texas, and that at a former term of this court, judgment was rendered against said McBride and Ætna Casualty & Surety Company in favor of I. L. and O. T. Woodward, which said judgment and interest to date amounts to $671.42, and that said judgment has been paid by the Ætna Casualty & Surety Company, and also judgment was rendered against said McBride and Ætna Casualty and Surety Company in favor of F. A. Winchell, John D. Roberts, Oliver Winchell and E. J. Oates, doing business under the name of Central Texas Iron Works, which said judgment and interest to date amounts to the sum of $540.15, and that said sum of $5,-701.08 should be prorated to the payment of said judgments, and the judgments herein rendered on this date against said McBride, and the Clerk of this Court is ordered to apportion said sum of all of said judgments rendered in

this cause 45.51 percent on each of said judgments on the amounts thereof as of this date, and that said Clerk shall pay to the Ætna Casualty and Surety Company said pro rata share of said judgments paid by it and to each of said judgments against said McBride as it may be required to pay herein."

The contested issue between the surety company and the Hawn Lumber Company, as made by the pleadings of the parties, and the assignments of error by the surety company, is that the Lumber Company reformed its accounts so as to credit payments made to it by McBride on debts for material furnished after September 5, 1927, for which appellant surety company is not liable as surety on the bond, when such payments should have been credited on material delivered previous to such date, and for which debt appellant is so liable.

The contested issue between the surety company and the Clay Products Company is whether the court erred in allowing interest on material furnished after January 1, 1928, from the date of the completion of the building, rather than from January 1st of the following year. This is a common issue in respect to the allowance of interest from such date on similar accounts allowed the other parties to the appeal.

The issue presented by the respective contentions of the surety company and the plumbing company is as to the extent, if any, the plumbing company complied with the terms of article 5160, as amended (Vernon's Ann. Civ. St. art. 5160 and note), in order to make it a beneficiary of the surety bond, and thereby fix the responsibility of the surety company for the plumbing company's claim.

The surety company makes the general contention that the sum of $5,701.08, retained by the school district and in its possession at the time the suit was filed, should first be subjected to the payment of those claims for which the surety company is liable under its bond, and only in the event such fund is not thereby exhausted shall there be a pro rata disbursement to those claimants who are not beneficiaries under the bond. This issue will be first disposed of, and the other issues will be discussed in the above-named order.

The obligation of the surety company is fixed by statute. In 1913, the Legislature enacted article 5160, R. S., making it mandatory on contractors with the state or a county, or a school district, or other subdivisions thereof, or a municipality therein, for the construction of any public building, before commencing such work, "to execute the usual penal bond, with the additional obligation that such contractor shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract." It was in obedience to this statute that the surety bond was executed. The

statute further provides that: "Any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the State or any municipality on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claims and judgment of the State or municipality. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the State or municipality, the remainder shall be distributed pro rata among said intervenors."

As shown by the contract between McBride and the school district, the original cost of construction for the completed building was to be $32,368.23, and it was provided in the contract that the bond should be in a sum equal to 50 per cent. of the cost of the building. This contract provided a manner in which changes in the plans and specifications of the building could be made and for extra charges caused by any such additions made to the plans and specifications. This contract also provided that, within five days after its execution, the contractor should furnish to the school district a satisfactory bond for an amount of one-half of the contract price, and, in obedience thereto, McBride, on the fifth day after the execution of the contract, executed the bond in suit in the penal sum of $16,184, with appellant surety company as surety.

The First Called Session of the Fortieth Legislature (1927), c. 39, § 1, amended article 5160, R. S. (Vernon's Ann. Civ. St. art. 5160 and note) by adding thereto the following provision: "Provided further, that no person or persons, firm or corporation shall be secured in the payment of any claim contracted prior to the execution of the contract that said bond is given to secure, and provided further that all claims for labor shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date that said claim accrued and became payable, and all claims for material shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date of the delivery of said material; and any claim filed after said thirty days shall not be secured by said bond."

This enactment became effective on September 5, 1927, and, under the holding of the Supreme Court, on the former appeal, became

applicable to all parties performing labor or furnishing material to the contractor from said date.

The Hawn Lumber Company did not comply with the terms of the amended statute, and hence the trial court held it not to be a beneficiary, under the surety bond, for claims for labor and material performed and furnished after September 5, 1927. The trial court also held that the plumbing company, on the greater part of its claim, failed to make itself a beneficiary under the terms of the amended statute. These and other claimants were given judgment against the contractor for the amount of their claims, but were only given judgment against the surety company for the portion of their claims which they had fixed against the surety company by complying with the terms of the amended statute. Has the surety company a claim on the $5,701.08, superior to claimants not beneficiaries of the surety bond? The said sum of money to be prorated represents a portion of the contract price for the construction of the building. If the entire contract price be not sufficient to pay all claims for work and material, it is clearly the policy of the law to prorate the amount of such contract price between the claimants, and this without regard to the liability of the required surety bond. It was clearly the policy of the law, before the amendment to article 5160, that the surety bond required to be given should secure claimants for labor performed and material furnished in whatever deficit remained, after the amount of the contract price became exhausted. The 1927 amendment to article 5160 did not change this policy as to the equality of claims against the money representing the contract price of the construction; it only placed a condition to be performed by the claimant, not affecting his claim against the contractor or the building fund, but only affecting his claim against the surety bond.

The surety company makes this plea, under a rule frequently announced, that by reason of its status as surety it is favored in law above other litigants. It is true that appellant, in the instant case, occupies the status of a surety, but it is also true that it assumed such status, not for friendship to, or good will for, the contractor, but for what it deemed an adequate consideration for the risk assumed. The reason, therefore, that entered into the announcement of the rule it attempts to invoke, does not exist in this case. In discussing such rule, and in determining the right of a surety, occupying the same status as the surety company occupies in this case, the Supreme Court of the United States, in the case of United States F. & G. Co. v. United States, 191 U. S. 416, 24 S. Ct. 142, 144, 48 L. Ed. 242, 246, used the following language applicable to the instant case: "The rule of strictissimi juris is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor. Such a contract should be interpreted liberally in favor of the subcontractor, with a view of furthering the beneficent object of the statute."

We shall adopt such holding as the rule in the instant case, and deny the surety company's contention on this issue.

The surety company contends that all claims for labor and material furnished after January 1, 1928, should not bear interest until January 1, 1929. The building was completed and accepted on or about February 22, 1928, all claims for labor performed and material furnished in January and February, 1928, necessarily matured on said date, and the claimants are entitled to interest at the rate of 6 per cent. per annum from said date. This contention is overruled.

The surety company's contention, that the trial court erred in respect to the amount of the claim of the Hawn Lumber Company, for which judgment was rendered against the surety company, because of misapplication of payments by the lumber company, is directly contrary to the specific finding of the trial court, and, as this finding is supported by evidence, it is binding on this court, and such contention is overruled.

Is the plumbing company a beneficiary of the surety bond on its entire claim or only a part thereof? The plumbing company contracted with McBride to perform the necessary labor, furnish the necessary material in installing the plumbing and fixtures called for in the plans and specifications of the school building, for the sum of $4,485. The plumbing company's contract with McBride provided that 50 per cent. of this contract price should be paid in cash by McBride when the work had been roughed in, and the remaining 50 per cent. to be paid in cash "when the fixtures have been set and this contract completed." During the latter part of September, 1927, plans and specifications of this work were duly amended so as to provide for the placing in the building additional plumbing fixtures, and McBride contracted to pay to the plumbing company for this additional material the sum of $1,108, in addition to the sum named in the plumbing company's contract. The surety company was notified of this and other changes in the plans and specifications, which increased the contract price of the school building by $3,031.85, and on September 29, 1927, wrote

to McBride, acknowledging receipt of a communication from him, advising of this change in the plans and specifications, and stated:

"You may take this letter as acknowledging our willingness to create this increase in the bond executed for you on August 5, 1927, in the penalty of $16,184. The additions to the contract, as enumerated, are as follows:

| | |
|---|---|
| Plans | $1,196.85 |
| Plumbing and heating | 1,108.00 |
| Auditorium | 729.00 |
| Total | $3,031.85." |

The legal effect of this written statement is that the surety bond was amended so as to increase the penalty in the sum of $1,515.98, making the total penalty of the amended bond $17,699.88. No material was furnished and no labor performed by the plumbing company, until after September 5, 1927, the date article 5160, as amended, became effective. It follows therefore that, under the holding of the Supreme Court in the former appeal, the plumbing company is a beneficiary under the bond, only in the event it complied with the terms of said article, as amended.

The trial court made a finding that, on February 22, 1928, the plumbing company had furnished labor and material under its original and supplemental contract, in the aggregate sum of $5,563.25, and, with the allowance of interest at the rate of 6 per cent. per annum from such date to the date of trial, the claim of the plumbing company amounted to $6,786.38, on which sum nothing had been paid. The trial court awarded the plumbing company judgment against McBride for the total amount of his claim, together with interest, in the amount above given. The trial court found that of this sum only $1,149.34 of the principal of $5,563.25 represented itemized sworn statements of material and labor furnished, as required under the amended statute, and hence allowed the plumbing company judgment against appellant surety company, principal and interest, in the sum of $1,402.20. The finding of the trial court and the judgment based thereon are manifestly wrong, under any construction of said amended statute that may be given, in view of the undisputed evidence in this case.

The contract of the plumbing company with the contractor contemplated the finished construction of a distinct unit of the school building; for the plumbing company was to perform all of the plumbing work, as specified in the contract, and to furnish and install all of the plumbing fixtures called for in the plans and specifications for the construction of the building. No one who furnished material to the plumbing company has complained that he was not fully paid for such material by the plumbing company, and no

laborer for such company has voiced a complaint that he did not receive full compensation for his labor from said company, and we assume that such persons were fully paid by the plumbing company. Neither is there any complaint that the plumbing company did not perform its contract in accordance with both the original and the amended specifications as to plumbing, and we therefore find that the plumbing company performed its contract and its supplemental contract according to contract specifications. The trial court necessarily so found when judgment was rendered against McBride in favor of the plumbing company for the full amount of its contract price. The primary question here involved is, Did the plumbing company comply with the requirements placed on it by the amendment to article 5160, and thereby make itself a beneficiary of the surety bond, both as to labor performed and material furnished?

That portion of the amended statute here applicable declares as to labor that: "All claims for labor shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date that said claim accrued and became payable."

McBride contracted to pay to the plumbing company 50 per cent. of its contract price when the work was roughed in. This included labor caused to be performed by the plumbing company from the beginning of the work until the roughing in was completed. No claim for labor performed accrued to the plumbing company prior to such time, and hence, prior to such time, no verified itemized statement could have been filed, under the specific terms of the statute. The undisputed evidence shows that the work was roughed in on December 1, 1927, and that a complete itemized statement for labor, caused to be performed by the plumbing company, was prepared and filed with the contractor on December 27, within the grace period of 30 days allowed by the statute.

McBride contracted to pay to the plumbing company the remaining 50 per cent. of the contract price for the plumbing work, when such work was finished. Under the specific terms of the contract, after December 1, 1927, no claim for labor accrued in favor of the plumbing company until February 16, 1928, the date the plumbing contract was completed. Again, under the specific terms of the statute, no claim for labor accrued until such date, and the undisputed evidence shows that, within a few days after such accrual, a complete verified itemized account for labor caused to be performed was filed with the contractor by the plumbing company.

█ The claims of the plumbing company for material furnished accrued on the same

dates as the labor claims accrued—that is, on December 1, 1927, 50 per cent. of the contract price, including material, accrued to the plumbing company, and on February 16, 1928, the remaining part of the contract price, including material, accrued. No claim for material furnished could have been presented to McBride previous to December 1, 1927, and no other claim could have been presented until February 16, 1928, the date the work was completed.

Under article 5160, as amended, "all claims for material shall be itemized and sworn to by the owner or his authozed agent and filed with the contractor, or with the county clerk of the county in which said work is being prosecuted within thirty days from the date of the delivery of said material."

The verified itemized statement called for in the quoted provision of the statute is for an accrued unpaid claim for material. The contractor was not required to pay any claim for material furnished in the construction of the building until such claim had accrued. The liability of the surety bond could only exist after the contractor had defaulted in the payment of a claim for material. In the absence of a specific contract as to the accrual of a claim for material furnished, such accrual matured, under the terms of the statute, when the delivery of the material to the contractor had been made. This provision of the statute, however, does not prohibit the parties from contracting between themselves as to the time in which the claim for materials furnished may mature.. It is not believed that the Legislature intended to require the doing of the useless work of filing of a verified statement for a claim that had not accrued, and the necessity for filing same might never exist. We therefore hold that the 30 days named in the statute, within which the verified statement must be filed, in order to fix the liability of the surety bond for the claim, began to run after December 1, 1927, the date on which the 50 per cent. of the plumbing company's contract price accrued, and that a verified itemized statement filed with the contractor by the plumbing company, within 30 days after December 1, 1927, for all materials furnished prior to the accrual of such payment, complied with article 5160, as amended, and fixed the status of the plumbing company as a beneficiary under the surety bond for the material furnished prior to December 1, 1927.

For the material furnished after December 1, 1927, no claim accrued until the plumbing company had completed its contract, which was on February 16, 1928. The 30-day period of grace for filing with the contractor the verified itemized statement of material furnished, within such time, began to run from February 16, 1928. The plumbing company having filed its verified itemized statement with the contractor within such period of 30 days, fixed its status as a beneficiary of the surety bond for all material furnished after December 1, 1927.

It follows that, in our opinion, the plumbing company complied with the terms of amended article 5160, and fixed liability on the surety bond for its entire claim.

The trial court rendered judgment against McBride in favor of the following parties: Central Texas Iron Works, $540.15; Malakoff Fuel Company, $384.82; Jet Crawford, $216; George Criddle, $48.65. These parties did not fix their respective claims against the surety company, and no appeal has been prosecuted by McBride from the judgment rendered in their favor. The following judgment was also rendered against McBride in favor of the following parties to this appeal: Mrs. C. H. Hawn and W. A. Hawn, doing business as partners under the name of Hawn Lumber Company, $3,345.80; Texas Clay Products Company, a corporation, $552.88; Dallas Plumbing Company, a corporation, $6,786.38. McBride did not appeal from these judgment, and, as against him, they became final in the trial court. A judgment in the first trial of this case was rendered in favor of I. L. and O. T. Woodward against both McBride and the surety company on the surety bond. This judgment was affirmed by the Supreme Court, and, on the motion for rehearing, the surety company was decreed to pay such judgment. At the time of the trial of this case, this judgment had been paid and with interest amounted to $671.42.

■■ The $5,701.08 in the possession of the school district had been paid into the custody of the trial court for an adjudication as to how such fund should be distributed. Each of the parties who have been awarded a judgment against McBride is clearly entitled to a pro rata share of this fund, for such fund is primarily liable to the discharge of the indebtedness, for which the respective judgments are rendered, to the extent that such sum will discharge same. These judgments against McBride aggregate the sum of $11,874.68. The surety company, having paid the Woodward judgment, is entitled to its pro rata distribution of this $5,701.08, for, at the time it was compelled to make this payment, the Woodward claim was entitled to the pro rata share of this money, and the surety company became subrogated to such right. Adding the amount of the Woodward claim to the total of other claims, there is the total sum of $12,546.10, for the payment of which there is available only the sum of $5,701.08; therefore, on the pro rata distribution of this fund, each of the six judgment holders, and the surety company's claim on the Woodward judgment can receive only 45.44 per cent. of their respective claims in the distribution of the said sum of $5,701.08, and each of said claims is awarded judgment in a sum equal to 45.44 per cent.

of their respective claims. When the money is received by each judgment holder, against McBride, the claim will be credited on the McBride judgment.

The judgment in favor 'of the Hawn Lumber Company against the Ætna Casualty & Surety Company, for the sum of $2,270.17, is affirmed. The judgment in favor of the Texas Clay Products Company, a corporation, against the Ætna Casualty & Surety Company, for the sum of $552.88, is affirmed as to the amount, but is subject to the credit of the amount of the percentage to be received by the Texas Clay Products Company from the distribution of the said sum of $5,701.08.

· The judgment of the trial court, awarding the Dallas Plumbing Company the sum of $1,402.20, is reformed, and judgment here rendered in favor of the Dallas Plumbing Company against the Ætna Casualty & Surety Company for the sum of $6,786.38, subject to be credited with the percentage of said sum of $5,701.08, when received by the Dallas Plumbing Company.

Judgment is here rendered in favor of the Ætna Casualty & Surety Company against C. W. McBride and M. T. Dodd for the total amount of judgments rendered against the Ætna Casualty & Surety Company; all judgments here rendered to bear interest at the rate of .6 per cent. per annum from the date of the judgment in the trial court.

All assignments of error not specifically discussed are overruled, and the judgment of the lower court is affirmed in part, reformed in part, and, as reformed, is affirmed.

### On Motion for Rehearing. ·

Our attention has been called to the commission of an error in the statement of the judgment rendered in this case by the trial court. It is stated in our original opinion that the trial court rendered judgment in favor of Central Texas Iron Works for the sum of $540.15, while the record discloses that no such judgment was rendered at the second trial of the case. However, the record does disclose that, at the first trial of the case, judgment was rendered in favor of Central Texas Iron Works, in the sum of $462.69, with interest from date of the trial, against McBride and the surety company. This judgment was affirmed by the Supreme Court and discharged by the surety company prior to the second trial. At the time of such trial this judgment, with interest, amounted to $540.15, and the trial court correctly held that the surety company was entitled to the pro rata share of the $5,701.08 on this sum of money. This pro rata share was allowed the surety company in the judgment rendered in our original opinion, and as to said ' surety company the result is the same in respect to the proration ·of the $5,701.08.

However, the judgment here rendered should be reformed, so as to deduct from the total amount rendered against McBride the said sum of $540.15, and to set aside the judgment against the surety company in favor of Central Texas Iron Works in said sum. As the surety company was allowed its said pro rata share of the $540.15, such allowance is not disturbed by this correction.

We have carefully considered all of the grounds raised by the surety company in its motion for rehearing, with the result that we adhere to the original opinion, and over· rule its motion for rehearing.

Overruled.