## NORTHWESTERN CASUALTY & SURETY CO. v. FIRST NAT. BANK OF MADISONVILLE et al.

### No. 1017.

Court of Civil Appeals of Texas. Waco.
Feb. 26, 1931.

Rehearing Denied March 26, 1931.

M. E. Gates, of Huntsville, Baker, Botts, Andrews & Wharton, and S. H. German, all of Houston, and Tom Scurry, of Dallas, for appellant.

Brownlee & Brownlee, and J. L. Broadway, all of Madisonville, and M. L. Bennett, of Normangee, for appellees.

BARCUS, J.

In November, 1928, the Thomas-Sable Construction Company, hereinafter called contractor, made a contract with the board of trustees of the Madisonville independent school district, hereinafter called trustees, to construct a school building for an agreed price of $49,000. The contractor furnished a bond, signed by appellant, hereinafter called surety company, under the terms of which the contractor was obligated to pay all claims, debts, or judgments, whether for materials furnished or labor performed; and said bond provided specifically that same was made for the benefit of all subcontractors, persons, firms, or corporations who might furnish any material or perform labor for or on account of the construction of said building. In the application for the bond and as a part thereof, the contractor specifically transferred and conveyed to the surety company all the deferred payments and retained percentages and any and all moneys and properties that might be due and payable to him at the time of any breach or default in said contract, or that might thereafter become due under the contract, and agreed that in such event all of said money and property should become the sole property of the surety company. Under the terms of the contract the trustees were to pay the contractor 85 per cent. of each estimate as approved by the architect and retain 15 per cent. until the building was completed. Under said arrangements the trustees paid the contractor approximately $39,600.

On May 10, 1929, the contractor, not having sufficient funds to pay the laborers and materialmen for labor and material used in the construction of said building, applied to the First National Bank of Madisonville, hereinafter called bank, for an advancement of $5,000 with which to pay said laborers and materialmen. The bank furnished said $5,000, and, in order to comply with its conception of the banking law, took from the contractor a demand note for said amount. At the same time and as part of the same transaction, the contractor assigned to the bank all of the future estimates due or to become due from the trustees to him until the $5,000 was paid, which assignment was duly accepted by the trustees. Thereafter three separate estimates, totaling $10,587.52, payable to the contractor and bank jointly, were issued and paid by the trustees to said bank. Out of this fund the bank credited $3,000 on the $5,000 note and permitted the contractor to, and he did, use the remaining $7,587.52 to pay for ad-

ditional labor and material used on said building. The last of the above estimates was issued July 8, 1929, and shortly thereafter the contractor abandoned the contract and the trustees notified the surety company thereof. It took over the contract and completed the building, and same was accepted by the trustees. In completing the building the surety company spent approximately $7,800, and in addition thereto it paid approximately $7,000 for material and labor that had been incurred by the contractor.

After the building was completed and accepted, the bank filed suit against the school district and its trustees, individually, for the $2,000 and accumulated interest still due on the money it advanced or loaned to the contractor. The surety company filed a separate suit against the trustees to recover the balance of the unpaid purchase price due by the trustees under the contract, amounting to approximately $10,868. The two suits were consolidated and several individual laborers and materialmen filed pleas of intervention. The cause was tried to a jury and resulted in judgment being entered for some of the interveners, and for the bank for $2,227, the amount of principal and interest due on its said advancement or loan, and for the surety company for the balance of said fund.

The surety company alone has appealed, and its only controversy relates to the judgment of the trial court in awarding the bank a prior lien on said fund for the $2,227 and interest, and, in the alternative, for failure of the trial court to give it a personal judgment against the independent school district for said amount. Appellant contends that, under the undisputed facts, the bank was not entitled to any portion of said funds. Appellee bank contends that it was entitled to and did have a prior and superior lien on said funds under and by virtue of article 5472a of the Revised Statutes, because it furnished to the contractor said money with which to pay for labor and material used in the construction of the building. Said article reads: "Any person, firm or corporation, or trust estate, furnishing any material, apparatus, fixtures, machinery or labor to any contractor for any public improvements in this State, shall have a lien on the moneys, or bonds, or warrants, due or to become due to such contractors for such improvements." Appellant contends that appellee bank did not, within the contemplation of said statute, furnish the contractor any material, apparatus, fixtures, machinery, or labor, and that it therefore does not come within the purview of said statute. Under article 5160 of the Revised Statutes (as amended by Acts 1927, 1st Called Sess., c. 39, § 1 [Vernon's Ann. Civ. St. art. 5160]) it is provided that any contractor who makes a contract to erect a school building or other public building shall be required to execute a bond which obligates him to pay all persons supplying him with labor and material in the prosecution of the work provided for in such contract. The provisions in article 5160 are in effect the same as the provisions of article 5472a, supra, to the extent that it protects all persons, firms, or corporations who furnish labor or material.

The record shows that at the time the obligation in controversy arose the contractor applied to appellee bank for money with which to pay his laborers and for material used in the construction of the school building. Appellee bank agreed to and did furnish the $5,000 on condition that the trustees would make the future estimates earned by the contractor payable to it. In carrying out the agreement appellee bank deposited in the bank to the credit of the contractor the $5,000, and took the contractor's note therefor in order to comply with the national banking laws. The entire $5,000 was used by the contractor to pay the laborers and for material that was used in the construction of said building. Neither the surety company, laborers, nor materialmen knew anything about said arrangement. Appellee bank's contention is that, since it did furnish the money for and same was used to pay laborers and materialmen, it therefore furnished labor and material to the contractor within the contemplation of said statute.

In construing the question as to whether a bank which advanced money to pay laborers and buy material comes within the purview of article 5160, almost the identical questions involved in this litigation were involved in Employers' Casualty v. Rockwall County (Tex. Civ. App.) 300 S. W. 148, and Bradshaw v. Wolfe City (Tex. Civ. App.) 3 S.W.(2d) 527; Employers' Casualty Co. v. Wolfe City (Tex. Com. App.) 25 S.W.(2d) 320. In each of said cases the trial court gave judgment for the bank, and the same was by the Court of Civil Appeals affirmed. The facts in said cases, especially in Employers' Casualty Co. v. Rockwall County, are strikingly similar to the ones involved in the suit at bar. The Supreme Court, in opinions handed down on January 21, 1931, Employers' Casualty Co. v. Rockwall County, 35 S.W.(2d) 690; Employers' Casualty Co. v. Wolfe City, 35 S.W.(2d) 694, reversed and rendered each of said cases and held that the bank was not entitled to any portion of the money retained by the county or municipality; and further held that, since the contractor had abandoned the contract and the surety company was required to and did take over the contract and complete the work, the surety company thereby became entitled to all of the unpaid portion of the contract price, both by reason of the assignment contained in the application for the bond as well as under the doctrine of subrogation. Under the holding of the Supreme Court in said cases, we think the trial

court was in error in entering judgment for the bank for any portion of said fund.

■ Appellees contend that the surety company was a mere interpleader in this litigation, and, not having established affirmatively its right to the money held by the trustees, is not in a position in this court to complain of the judgment of the trial court. We overrule this contention. We think appellant clearly established its right to all the money due and unpaid by the trustees under the contract, since it was shown without dispute that the contractor abandoned said contract and appellant was required to and did take over said contract and complete the building according to the plans and specifications. Under the plain provisions of the contract as made between the contractor and appellant at the time it signed the bond as surety, the contractor transferred and assigned to appellant all of the unpaid portion of the money that was due him or that would become due him under the contract at the time he abandoned same.

The cause having been fully developed, the judgment of the trial court is reversed, and judgment is here rendered denying appellee bank any recovery. There being no complaint of the other portions of the judgment of the trial court, same are not disturbed.