### AETNA CASUALTY AND SURETY COMPANY V. HAWN LUMBER COMPANY ET AL.

No. 6672. Decided October 14, 1936.
Rehearing overruled November 19, 1936.
(97 S. W., 2d Series, 460; 98 S. W., 2d Series, 167.)

298

*Harry P. Lawther* and *Harold B. Sanders,* both of Dallas, for plaintiff in error.

Where a materialman on a public job receives payment from the contractor from moneys paid to the contractor on estimates, it is the duty of the materialman to apply the payments to the oldest items on the account, so as to relieve the surety, especially when the account is carried on the books of the materialman as an open account with cash payments being applied to the

outstanding balance, and materialman cannot readjust his accounts for the sole purpose of recovering against the surety company. Prairie State Bank v. United States, 164 U. S., 227, 17 Sup. Ct., 142, 41 L. Ed., 412; Union Ind. Co. v. Benton County Lbr. Co., 179 Ark., 752, 18 S. W. (2d) 327; Farmers Bank v. Hayes, 58 Fed. (2d) 34; McLendon Hdw. Co. v. Black, 264 S. W., 1011; Sullivan v. City of Galveston, 34 S. W. (2d) 808; Hileman v. Faus, 158 N. W., 597; Dugand v. Indemnity Ins. Co., 206 N. Y. Supp., 900.

*McBride, O'Donnell & Hamilton, Hamilton, Lipscomb & Wood,* all of Dallas, and *Bishop & Holland,* of Athens, for defendants in error.

MR. JUDGE GERMAN of the Commission of Appeals delivered the opinion for the court.

Four opinions have heretofore been written in this case. They are reported in (Aetna Casualty & Sur. Co. v. Woodward, Civ. App.) 31 S. W. (2d) 679, (Id. Com. App.) 36 S. W. (2d) 721, (Id. Com. App.) 41 S. W. (2d) 674, and (Aetna Casualty & Sur. Co. v. Hawn Lbr. Co., Civ. App.) 62 S. W. (2d) 329. Plaintiff in error Aetna Casualty and Surety Company will be referred to as Surety. Defendant in error Dallas Plumbing Company will be referred to as Plumbing Company. Defendant in error Hawn Lumber Company will be referred to as Lumber Company.

The first question concerns the right of the Plumbing Company to recover of the Surety the sum of $6786.38, the value of materials and labor furnished by it in installing the plumbing in a school building erected by Malakoff School District under contract with one R. S. McBride. Plaintiff in error was surety for McBride, and the principal question is whether or not the Plumbing Company complied with the terms of Article 5160 of the Revised Statutes of 1925, as amended by Act of the First Called Session of the 40th Legislature, in such way as to become a beneficiary under the bond of the Surety.

The contract with McBride was executed August 1, 1927, and the surety bond was executed August 5, 1927. The Act of 1927 amending Article 5160 became effective September 5, 1927. The provisions of that Act which are material are as follows:

"Provided further, that no person or persons, firm or corporation shall be secured in the payment of any claim contracted prior to the execution of the contract that said bond is given to secure, and provided further that all claims for labor shall be

itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date that said claim accrued and became payable, and all claims for material shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date of the delivery of said material; and any claim filed after said thirty days shall not be secured by said bond."

On a former appeal the Supreme Court held that the Surety was liable for all labor and materials furnished the contractor prior to September 5, 1927, regardless of whether or not claims had been filed therefor, but further held that as to labor and materials furnished after September 5, 1927, the Act applied, and in order to charge the Surety with liability it was necessary for claims for labor to be filed with the contractor or county clerk within thirty days after such claims accrued and became payable, and claims for material to be filed with the contractor or county clerk within thirty days from the date of the delivery of the materials. It follows that the real inquiry is whether or not the Plumbing Company filed its claim for labor and material within the time prescribed by the statute.

The Plumbing Company had a contract with McBride to furnish all materials and labor and install the plumbing in the school building for a lump sum of $4455.00. Of this sum, 50 per cent was to be paid in cash when the job had been "roughed in," and the remaining 50 per cent was to be paid when the contract was completed. On December 14, 1927, there was a supplemental contract, by the terms of which additional materials were to be furnished and work done for a lump sum of $1108.25. According to itemized verified statement attached to the Plumbing Company's pleading and alleged to have been delivered to the contractor on December 27, 1927, the Plumbing Company began to supply material on September 19, 1927, and began performing labor on the job on October 15, 1927. It seems to be undisputed that the job was roughed in about December 1, 1927. The first claim filed with the contractor in an effort to comply with the statute was filed December 27, 1927, and was itemized and verified. The contractor abandoned the job on December 28, 1927, and the school district proceeded to complete the building. After December 27, 1927, and up to February 22, 1928, the Plumbing Company furnished additional items of material and did labor on the job which was completed

and accepted on the last named date. The Plumbing Company filed with the former contractor McBride another verified itemized statement showing value of all materials furnished and labor performed from September 19, 1927, to date of the completion of the work. This last statement was filed February 22, 1928.

The Plumbing Company takes the position that because it had a special contract with McBride, by the terms of which it was to be paid a lump sum for the completed job, one-half of which was to be paid when the work was roughed in and the balance when the job was completed, that by filing its itemized verified statement with the contractor within thirty days from the date the plumbing was roughed in and within thirty days after the job was completed it complied with the statute. It contends that one-half of its claim for labor could not and did not accrue until the job was roughed in about December 1, 1927, and there was no delivery of materials prior to that date, and that the other one-half of its claim for labor did not accrue until the job was completed, and there was no delivery of additional materials until that date. The Court of Civil Appeals agreed with this contention and rendered judgment in favor of the Plumbing Company for the full amount of its claim with interest. 62 S. W. (2d) 329.

While we think the question involved was decided on the former appeal to this court, nevertheless we have again carefully investigated the authorities and reached the conclusion that the contention made by the Plumbing Company cannot be sustained, because directly contrary to the language of the statute. In the case of Union Indemnity Company v. Rockwell (Com. App.), 57 S. W. (2d) 90, a contract for a lump sum, turnkey job of plumbing was involved. The claimant, after the completion of the work, filed verified statement showing the nature of the contract, the gross amount contracted to be paid, the amounts paid, and the balance due. It was held that this was not a compliance with the statute, in that there was not an itemization of the days of labor and the materials furnished. The requirement that the statement be itemized is an important one. We think it necessarily negatives the idea of a lump sum contract for labor and material, so far as liability of the Surety on the bond is concerned. The purpose of itemization is to enable all parties dealing with the contractor to determine from time to time as the work progresses "for what the lien is claimed, whether for work and labor, and if so the nature of

it, when performed, and at what price; or materials, and if so, the kind, quality and price and when furnished or delivered; or both labor and materials, and if so the kind, quality, the price of each and when performed or furnished." See Ball v. Davis, 118 Texas, 538, 18 S. W. (2d) 1063, and 40 Corpus Juris, page 241, Note 93 (b).

■ This purpose of the statute certainly cannot be preserved if by virtue of a special contract between contractor and a subcontractor the filing of the claim may be deferred for an indefinite time on the ground that the job, including labor and material, is to be done for a lump sum and paid for when completed. Certainly if such were allowed it would be unfair to others who might wish to extend credit to the contractor or to furnish him with labor and material during the progress of the work. The plain language of the statute with reference to materials is that the claim must be filed within thirty days "from the date of the delivery of said materials." This must be held to be the actual physical delivery of the various items or consignments of material and not a technical legal delivery based on the provisions of the contract. The former holding in this case was that claims for labor under the general contract accrued and became payable at the time of the bi-weekly payments by the school district to the contractor.

The precise question here involved, so far as claim for materials is concerned, was decided in the case of National Surety Company v. United Brick & Tile Company, 71 S. W. (2d) 937, by the Court of Civil Appeals at Amarillo. That decision was under the Act of 1929 extending the time of filing claims from thirty to ninety days, but which in other respects was similar to the Act of 1927. We approve the following language in that opinion:

"The defendant in error insists that, because the contract between Stanton and the brick and tile company was an entirety and a continuing contract, the defendant in error was not required to file its sworn account in the office of the county clerk until all of the bricks contracted for had been delivered. To give it that construction would be tantamount to amending the statute, which, as we have just said, is a part of the contract.

"* * *

"We believe the requirement of article 5160 that verified itemized statement of materials furnished should be filed within ninety days after such materials have been delivered, even

though such materials necessary to complete the work are to be delivered in installments, is mandatory and conclusive. Consideration for the rights of other materialmen and laborers who might become creditors and entitled to compensation requires strict compliance with that provision, and since the statute is a part of the contract and a construction in accordance with appellee's contention would be an alteration of the contract, the surety should not be held liable except for material delivered within ninety days before the filing of the itemized account."

While the application for writ of error in that case was dismissed for want of jurisdiction, yet the holding of the Court of Civil Appeals on this question was essential to the disposition of the case made by it, and the action of the Supreme Court necessarily constituted an approval of this holding.

Just as the terms of the statute are read into the bond, notwithstanding its literal terms, so we think the requirements of the statute with reference to filing itemized verified claims are read into contracts between the contractor and sub-contractor, and are exclusive of other methods creating liability against the Surety. Indemnity Insurance Company v. South Texas Lumber Company (Com. App.), 29 S. W. (2d) 1009; Fidelity & Deposit Company of Maryland v. Prassel Sash & Door Company, 24 S. W. (2d) 539 (Writ refused); Meyers v. Wood, 95 Texas, 67, 65 S. W., 174.

■ The contract in this instance provided that payments should be made by the school district to the contractor every two weeks of 80 per cent of the amount of labor and materials in place. These payments were to be made upon certificates of the supervisor of the school district. It is common knowledge that these bi-weekly. payments are usually made, under similar contracts, upon estimates of the labor performed to date of the estimate and of all materials upon the ground at that date. It would appear probable, therefore, that in this case the contractor was paid 80 per cent upon labor performer and materials furnished by the Plumbing Company, and if the Plumbing Company voluntarily made a contract, under the terms of which it did not receive its proportionate part of these 80 per cent payments upon its labor and materials when they were made, it has no just ground of complaint.

In this case the Plumbing Company filed a statement which showed in detail each and every item of the materials furnished, the dates furnished, and the value of each item. Such

statement showed in detail the hours of labor, the dates performed, and the amount charged for labor on each date. It is thus demonstrated that it could have literally complied with the requirements of the statute, and we hold that it has done so as to certain items of labor performed and materials delivered. The trial court has found in its favor for such items, and rendered judgment therefor in the sum of $1402.20, with 6 per cent interest from date of judgment. This part of the judgment was in no manner attacked by plaintiff in error by assignments in the Court of Civil Appeals and there is no assignment in the petition for writ of error which questions the correctness of same. The only pertinent assignments relate to sufficiency of the pleadings, and we are of the opinion that the pleadings were sufficient to show compliance with the statute as to the items for which this amount was allowed. The judgment of the trial court in this respect will be affirmed.

The next question concerns the correctness of the judgment of the trial court against the Surety in favor of Hawn Lumber Company for $2270.17 with interest, which judgment was affirmed by the Court of Civil Appeals. As noted above, this court held on the former appeal that the Surety was liable for all labor and materials performed and delivered prior to September 5, 1927, regardless of whether or not claims were filed. It is not contended that Hawn Lumber Company ever attempted to comply with the statute after it became effective, and its claim is for the value of labor and materials performed and delivered prior to September 5, 1927.

It appears that beginning with August 9, 1927, and continuing to January 20, 1928, the Lumber Company delivered to the contractor materials to the value of $11,834.21; that during this same period there was paid to the Lumber Company the sum of $9099.48. It further appears that prior to September 5, 1927, the company had delivered to the contractor materials of the value of $4450.27 and had been paid the sum of $2600.00, leaving a balance of $1850.27. The judgment of the trial court was for this sum, with interest. The contention of the Surety is that the account between the contractor and the Lumber Company was a running account, upon which payments were made from time to time, and that even though there was a balance unpaid on September 5, 1927, nevertheless it was entirely liquidated by payments thereafter made and credited to the account. On the contrary, the Lumber Company takes the position that there was a special contract between it and the contractor, by which each estimate of materials was to be re-

garded as a separate transaction and that on each of the estimates 80 per cent was to be paid from bi-weekly payments made by the school district to the contractor, leaving the balance of 20 per cent of each estimate unpaid. It, therefore, contends that payments made after September 5, 1927, were to be applied to liquidate 80 per cent of the estimates after that date, and were not to be credited on the account according to the usual method of making credits, towit, by applying to the oldest unpaid part of the account. Upon the theory that no part of the payments made after September 5, 1927, was to be credited on the balance unpaid on that date, the trial court rendered judgment against the Surety for the $1850.27, with interest.

From a careful study of the record, it seems to us evident that the trial court erred in this respect. The bookkeeper of the Lumber Company who acted for it in making the contract testified that the account was a running account upon which payments were to be made and were made from payments made by the school district to the contractor. He further testified that there was no special contract as to sales of different articles of material, but the contract was regarded as a whole, and payments were credited by him upon the *account*. On redirect examination he made a statement which is the only basis of the claim that there was a special contract that each estimate was to stand as a separate transaction and payments were to apply on separate estimates and not upon the general account. His testimony in this regard was as follows:

"I made a trade with Mr. McBride to furnish him material on the Malakoff School Job, and I was to give Mr. McBride an estimate I think every week, or every two weeks, might have been every two weeks, and Mr. McBride was to carry that estimate to the Malakoff School Board and get the money and pay me 80% of that estimate, and that was the way the thing went all the way through on the job, and when I said it applied on the *account*, of course when I collected money I *credited it to the Account*." (Emphasis ours.)

■ As we construe this statement, it does not purport to be an agreement to regard the estimates as separate and distinct transactions and to constitute a contract for the application of payments in a manner contrary to the usual methods of such application. It was but an agreement that payments should be made on the account in installments from payments by the school district to the contractor, to the amount of 80 per cent

of the estimates, which payments were to be applied *on the account*. Besides, the statement of the account offered in evidence clearly shows that the payments were credited upon the account as a whole. That is the plain meaning of the language of the bookkeeper quoted. It is evident there was no specific application of payments to any particular part of the account or any particular estimate, but there was a crediting of payments on the account as a whole. Unquestionably, we think the law made the application to the oldest unpaid portion of the account. It appears plain to us that the Lumber Company has wholly failed to show that there was an actual application of payments after September 5, 1927, at the time the payments were made, to any particular sale or sales of materials; but they are in the position of contending upon the trial that they were entitled to make a new application of payments in accordance with the alleged special contract.

It seems to be settled that when payments are made from the proceeds or fruits of the very contract, business or transaction covered by the obligation of a surety; and when the source of the funds is known to the creditor or person receiving the same (both of which conditions were present in this case), the surety equitably is entitled to have the payments applied to the discharge of the debt for which he is bound, even though application has been made by the creditor otherwise. N. O. Nelson Mfg. Co. v. Wallace, 66 S. W. (2d) 505 (Writ refused); Columbia Digger Company v. Sparks, 227 Fed. 780, and authorities in Annotation at page 716 of 21 A. L. R. When there has been no actual application at the time of payment the law will thus make application. Willis & Bro. v. McIntyre, 70 Texas, 41, 7 S. W., 598, 8 Am. St. Rep., 574. It is not necessary, however, in the present case to rest the decision upon these holdings. As shown above, we conclude that there was an actual crediting of the payments upon the account as a whole, with consequent application by law to the oldest unpaid portion, and there can be no question but that the Lumber Company was thereafter precluded from changing application of the payments to the detriment of the Surety. Harrison v. First Natl. Bank., 117 Ark., 260, 174 S. W., 553, and authorities in Annotation at page 712 of 21 A. L. R.

■ The last question concerns the proper disposition to make of a balance retained by the school district. The 20 per cent retained under the contract amounted to $7080.01. After the job was abandoned, the school district expended the sum of $1378.93

in completing the building, leaving a balance of $5701.08. On December 27, 1927, the contractor made an assignment of his interest in this fund to the amount of $5563.25 to the Dallas Plumbing Company. The trial court held that the sum retained by the school district should be prorated between all those holding judgments against the contractor, regardless of whether they were secured by the bond or not, and further held that the Surety, as to amounts paid by it under its bond, should be regarded as other creditors and be allowed only its proportionate part of the retained sum.

The Surety not only had an equitable lien upon the retained percentages (See opinion on former appeal, 31 S. W. (2d) 725), but it had also a written assignment from the contractor. It, therefore, had claim upon all of this retained fund as security to the full extent of all amounts paid by it as surety under its bond; subject, however, to claims of laborers and materialmen, if any, who affixed their liens against the retained fund as provided by Articles 5472a and 5472b of the Revised Statutes of 1925. Metropolitan Casualty Insurance Company v. Cheaney, 55 S. W. (2d) 554; Northwestern Casualty & Surety Company v. First Natl. Bank, 36 S. W. (2d) 535; Employers Casualty Company v. Rockwall County, 120 Texas, 441, 35 S. W. (2d) 690, 38 S. W. (2d) 1098.

We are of the opinion that the proper disposition to be made of this retained fund is as follows:

First. Payment should be made pro rata of all claims for labor or materials, if any, which under Articles 5472a and 5472b may be secured by a lien against this fund. The trial court should determine whether or not there are such claims in light of the decision in the case of Metropolitan Casualty Insurance Company v. Cheaney, supra.

Second. If any balance remains, it should be paid to the Surety Company to the extent of all sums paid by it under the obligation of its bond.

Third. If any balance remained, it should be paid to Dallas Plumbing Company by virtue of the assignment to it by the contractor. It is our conclusion that creditors of the contractor, who have not complied with the provisions of Article 5472a and Article 5472b for the purpose of fixing a lien against this fund, are not entitled to participate in same.

The judgments of the trial court and of the Court of Civil Appeals in favor of all parties as against C. W. McBride are affirmed.

The judgment of the Court of Civil Appeals in favor of

Dallas Plumbing Company is reversed and the judgment of the trial court in favor of said Dallas Plumbing Company for $1402.20, with interest at 6 per cent from date of judgment, is affirmed.

The judgments of the trial court and the Court of Civil Appeals in favor of Mrs. C. H. Hawn and W. A. Hawn, doing business under the name of Hawn Lumber Company, as against the Surety Company, are reversed and judgment is here rendered in favor of the Surety Company.

The judgments of the trial court and the Court of Civil Appeals in favor of Texas Clay Products Company against the Surety Company is affirmed.

The judgments of the trial court and the Court of Civil Appeals in so far as they affect the disposition of the retained fund of $5701.08 are reversed and the cause in that regard is remanded with instruction to the trial court to make disposition of this fund in accordance with this opinion.

The judgment of the Court of Civil Appeals is in all other respects affirmed, except as to costs.

The judgment of the trial court in awarding costs in that court is affirmed.

The costs incurred in the Court of Civil Appeals should be paid one-third by the Surety Company, one-third by the Dallas Plumbing Company and one-third by the Hawn Lumber Company. The costs in this court should be paid one-half by the Dallas Plumbing Company and one-half by Hawn Lumber Company.

Opinion adopted by the Supreme Court October 14, 1936.

### ON MOTION FOR REHEARING.

The trial court in this cause rendered judgment against C. W. McBride in favor of the following parties: Malakoff Fuel Company for the sum of $384.82; Jet Crawford for the sum of $216.00, and for George Criddle for the sum of $48.65. It was further adjudged that $45.51 per cent of these judgments was to be paid out of the fund retained by the School District. None of the parties on appeal complained of these judgments, and none of the parties mentioned were named in the appeal bonds. While in our original opinion we discussed generally the disposition to be made of this retained fund and reversed and remanded the cause in that regard, with instructions as to its disposition, yet we were not authorized to disturb the judgments rendered in favor of the parties above

named. As to them and their right to participate in this retained fund on the basis set out in the trial court's judgment we have concluded that said judgment was final. Our former opinion and judgment as to the retained fund is therefore modified so as not to affect the rights of the parties above mentioned.

With this explanation the motion of defendant in error, Hawn Lumber Company, is overruled.

Opinion adopted by the Supreme Court November 19, 1936.