Robert V. OAKLEY, Appellant,

v.

ARMSTRONG TRANSFER & STORAGE CO., Appellee.

No. 4228.

Court of Civil Appeals of Texas.

Waco.

May 7, 1964.

Rehearing Denied May 28, 1964.

Folley, Snodgrass, Calhoun & Kolius, Amarillo, for appellant.

Simpson, Adkins, Fullingim & Hankins, Richard E. Stokes, Jr., Amarillo, for appellee.

TIREY, Justice.

Appellee grounded its action on two written contracts executed by it and appellant. These contracts were executed contemporaneously on the 28th day of December, 1957; one was designated as "Tractor Lease Agreement," and, among other things, it provided that appellee had leased One-International 1957 Truck Tractor to appellant for a term of 27 months, beginning the 1st day of December, 1958, and

ending the 1st day of April, 1961. This instrument bound the appellant to pay the sum of $7,984.46 payable in installments beginning February 1, 1958, the first 26 being for $300.00 each, and the last, the 27th, being for $184.46. This contract also provided that title to the property shall remain in the lessor until all payments stipulated have been paid. It further provided that lessee agreed to pay, or have it charged to his account, all maintenance, identification, insurance, licenses, taxes, fees, permits and other operating expense. It also provided for cancellation of each of the contracts by lessor or by lessee. The other contract was designated as "Van Operator-Driver Contract," and in this contract Oakley, appellant, was designated as the contractor. Pertinent to this discussion the contract had the following provisions:

"HAULING 3

"The CONTRACTOR will devote said tractor exclusively to the service of the COMPANY in the transportation of goods, wares and merchandise, loading and unloading the same and delivering to destination in the fulfillment and in compliance with the duties, responsibilities and obligations of the COMPANY as an agent of ALLIED VAN LINES, INC. and in accordance with shipping contracts or bills of lading of ALLIED VAN LINES, INC. with the consignors or consignees, and in connection therewith comply with all of the By-Laws, Rules and Regulations, Drivers' Manual and instructions of ALLIED VAN LINES, INC. all the rules and regulations and instructions of the COMPANY.

*    *    *    *    *    *.

"CHARGES 19

"The COMPANY may charge to the CONTRACTOR'S ACCOUNT any and all expense incurred by the COMPANY for the express benefits of the CONTRACTOR."

These contracts further provided in effect that Oakley would become an independent contractor, and in these contracts Oakley contracted to do certain work for appellant at stipulated prices.

Trial was had without the aid of a jury and in the decree the court found that plaintiff was entitled to recover from the defendant the sum of $5,591.22, and also the title and possession of the truck and decreed accordingly and fixed interest charges at 6% per annum from the date of the judgment.

The judgment is assailed on what defendant designates as three points. They are to the effect that the Court erred: (1) In admitting parol evidence showing a modification of a written contract, in that it allowed parol evidence of a new contract between the parties; (2) In awarding title to the truck to Armstrong Transfer & Storage Company, because the truck was a part of the exempt property of Oakley, the purchaser, and was not subject to forced sale for the payment of debts; (3) In awarding the trucking company judgment against Oakley, because the evidence introduced was insufficient to show that Oakley was indebted to the trucking company in the sum of $9,091.22. We overrule each of the foregoing points for reasons hereinafter briefly stated.

First of all, appellant did not request any findings of fact and conclusions of law, and none were filed. Under this state of the record it is our duty to affirm the judgment of the trial court if it can be upheld on any legal theory that finds support in the evidence. Bishop v. Bishop, 359 S.W.2d 869, (Sup.Ct.), point 3. See Rule 296, Texas Rules of Civil Procedure, and cases there cited. In Munn v. Riggs, Tex. Civ.App., 257 S.W.2d 714, we find this statement:

"The rule is well established that unless findings are filed by the trial court, the appellate court must presume that the trial court correctly found all fact is-

sues having support in the evidence in favor of its judgment rendered."

Under the contract evidencing the lease of the truck to Oakley he was obligated to make truck payments and other operating expenses from January 1, 1958, and evidence was tendered to the effect that Oakley defaulted in payments on the truck and some of the other payments relating to expense money advanced to him by the trucking company, and under the written lease contract the trucking company had a right to sequester the truck. Evidence was tendered to the effect that after the trucking company converted the truck, it sued for the full debt under the tractor and van operator contract. On the evidence tendered the court awarded judgment for the full amount of the debt, including all payments owing on the tractor and the van operator charges, totaling $9,091.22, but credited the market value of the truck to Oakley as damages for conversion for the sum of $3500.00, that sum being the highest value placed on the truck by any witness at the time it was converted, and rendered judgment in favor of Armstrong for the balance of $5,591.22. We think there are two separate theories supporting the admission of the testimony complained of in appellant's point 1. The general nature of the challenged evidence was proof that either at the time of the contract, or thereafter, the parties agreed that title to the truck would not pass until all sums due under the truck lease contract and the van operator contract were paid in full. We think the evidence was admissible apart from any consideration of the parol evidence rule or any agreement by Oakley, because the van operator contract (which was a written contract between the parties) and the tractor lease agreement are both silent concerning the application of payments to be made thereunder. There was no requirement in either contract for separate accounts for the two items, and, this being true, Armstrong was justified in establishing a single account for expenses advanced and payments due under the contracts between the parties. According to Turpen, the auditor for the trucking company, the account was handled under one accounting system. Under the foregoing conditions Oakley never specified that income turned over by him to the trucking company was to be credited to the tractor contract, and the trucking company was free to make any application of the payments by Oakley that it chose. The rule is:

"When the debtor makes a payment without exercising his right to direct its application, the creditor may appropriate it to any debts due from the debtor he chooses, provided he does not make an application that is inequitable and unjust to the debtor".

(This rule has never been changed). See 44 Tex.Jur.2d, Payment, Sec. 40, and cases there cited. See also Bitter v. Bexar County, 11 S.W.2d 163, (Tex.Com.App.) pt. 6; Munn v. Riggs, Tex.Civ.App., 257 S.W.2d 714, points (5, 7); also Foxworth-Galbraith Lumber Co. v. Southwestern Contracting Corporation, Tex.Civ.App., 165 S.W.2d 221, (w. o. m.), pt. 8. In this cause it is without dispute that the trucking company was making advances to Oakley in addition to taking care of his expenses of operating the truck; so, under these conditions, it was not inequitable for the trucking company to apply the payments made by Oakley (absent directions by Oakley) to the advances made and the expenses of operating the truck. We think the foregoing undisputed factual situation distinguishes this case from the rule applied in Jamison v. Alvarado Compress & Warehouse Company, 45 Tex.Civ. App. 263, 99 S.W. 1053, because in that case we find this statement:

"When, as in this case, there is a continuous account consisting of many items, if no application of payments is made by either party, they will be applied according to the priority of time."

In Pyle v. Byrne, Tex.Civ.App., 331 S.W.2d 507, (n. r. e.), points (2, 3), we find this statement:

"There is an entire absence of evidence that the appellant directed the manner in which payments and credits should be applied to the account, * *."

In Aetna Casualty & Surety Co. v. Hawn Lumber Co., 128 Tex. 296, 97 S.W.2d 460, there was no evidence that the creditor had made any application of the payments. It is our view that the factual situation pointed out in the foregoing cases distinguished each of them from the application of the rule we have previously stated as controlling, because in the case at bar there is ample evidence in the record that the creditor applied the payments to the charges other than truck payments. Most of the evidence complained of by appellant is consistent with the theory that the trucking company informed Oakley that it would apply payments first, to advances made and expenses incurred by him in operating the truck, and then to the tractor payments. In fact, there is testimony by Turpen, the auditor, that Oakley knew of this application. Our view of Oakley's testimony is that the Court, in consideration thereof, had the right to infer that Oakley knew that the payments would go to advances and expenses of operation prior to the payment on the truck. He testified in part:

"Q.  *  *  *  you deny the understanding that you were going to have to pay the back expenses and advances before the tractor was yours?

"A.  Well, Mr. Turpen didn't read that to me.

"Q.  You knew that, though?

"A.  Yes, I knew it had to be paid back and I was trying to pay it back."

There is an absence of evidence to the effect that Oakley, at any time, directed application of the payments. Needless to say the foregoing testimony is sufficient to support an implied finding by the trial court that the trucking company applied all payments to advances made and to expenses of operation prior to the truck payments. Such an application has support in reason, because Armstrong would naturally wish to apply them first to the unsecured charges under the operation contracts, and then to the truck, which was the only security for the extensive advances to Oakley. As stated above, the creditor may make such an application of payments, and it may be proved by the circumstances in any case. See 44 Tex.Jur.2d, Payment, Sec. 40. That leads us to say that the evidence of this application by Armstrong was admissible whether Oakley agreed to it or not, and does not vary the contracts, because they were silent on the application of the payments to be made.

■ In the second place, the parol evidence rule has no application to subsequent payments. See 2 McCormick and Ray, Texas Law of Evidence, Sec. 1671 (2d Ed. 1956). See cases there cited. There is evidence in the record that Oakley agreed, after the execution of the written contract, that all payments would have to be made before the truck became his. Turpen so testified, and Oakley, in his testimony, at one time admitted it. However, Turpen's testimony is sufficient to support the implied findings of the trial court that this agreement was made. But, appellant asserts that there was no new consideration for the agreement. If appellant's position were correct he must assume from this agreement that the written contract required application of payments by him to the tractor contract first, or at least application in some manner other than to the tractor contract last. Otherwise, the oral agreement would not vary or contradict the written contract and the parol evidence rule would not apply since both contracts are

silent as to how the payments should be made and applied. Appellant does not tell us his theory of the application of the payments. Since the record is without dispute that appellant was delinquent in his payments on both the truck and the advances made to him for the operation of his truck, the consideration was a forbearance of the trucking company to sue or to terminate the contracts. But appellant contends that there was insufficient or no evidence to establish an indebtedness of $9,091.22 owing by Oakley to the trucking company. We overrule this contention. It is our view that there is ample evidence in the record to show that Oakley owed Armstrong a total of $9,091.22. There was likewise evidence to the effect that $7,984.46 represented the unpaid rental charges. The difference of $1106.76 represents charges made to Oakley's account under the Van Operator-Driver Contract. Turpen testified to the effect that all charges shown on plaintiff's exhibits 2–6 were made under the Van Operator-Driver Contract and its attachments. Therefore, this testimony was received by the court under a written contract. This Van Operator-Driver Contract allowed Armstrong to charge items to Oakley's account. This is shown in the plaintiff's exhibit 1, paragraph 19, and the same is true as does the Tractor Lease Agreement as shown by paragraph 3. Turpen testified specifically that Oakley owed Armstrong $9,091.22, and Oakley never challenged any item charged to his account as being unauthorized by the terms of the contract. That leads us to say that we think there was ample evidence for the trial court to find that Oakley owed the trucking company $9,091.22 for the tractor payments, and other charges under the written contracts. It was from this figure that the court deducted the fair market value of the truck ($3500.00) as damages for conversion to reach the final judgment of $5,591.22.

We find no error in the judgment, and it is affirmed.