FIDELITY AND DEPOSIT COMPANY OF
MARYLAND, Appellant,

v.

INDUSTRIAL HANDLING ENGINEERS,
INC., Appellee.

No. 549.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Dec. 15, 1971.

Rufus Wallingford, Fulbright, Crooker & Jaworski, Houston, for appellant.

Ralph Carrigan, Baker & Botts, Houston, for appellee.

TUNKS, Chief Justice.

This is a mechanic and materialman's lien case. A nonjury trial resulted in a judgment in favor of the mechanic and materialman, who was a subcontractor, against the original contractor's bonding company. The appellant, who was defendant in the trial court, is Fidelity & Deposit Company of Maryland, hereinafter called "Fidelity". The appellee, who was plaintiff in the trial court, is Industrial Handling Engineers, Inc., hereinafter called "Industrial". All reference herein to statutes by number are references to Vernon's Texas Revised Civil Statutes Annotated.

Green Valley, Inc., owner, entered into a contract with Tex Thornton, Inc., original contractor, for the construction of a shopping center. Fidelity made a performance and payment bond covering the construction project. This bond was duly filed in the office of the County Clerk in accordance with art. 5472d. Tex Thornton, Inc. entered into a subcontract with Industrial by which Industrial was to furnish and install a platform lift as part of one of the buildings in the shopping center. The subcontract fixed the price of the lift at $1913.00 and the installation charge at $475.00. The lift was described as including a voltage reduction transformer.

Industrial ordered the lift from a manufacturer in Indiana. At the time it received the order the manufacturer did not have the required reduction transformer. Nevertheless the platform was shipped and was delivered without the transformer to the jobsite in September of 1966. The lift was left in its crate and at the jobsite. In November of 1966 the transformer arrived and the lift was installed. Tex Thornton, Inc. was billed for the lift and the installation but failed to pay. Thereupon Industrial gave notice of its claim to Fidelity. This notice was first given to Fidelity on February 14, 1967. The principal question in this appeal is whether that notice was timely under the provisions of art. 5453, as amended in 1961.

Before 1961 art. 5453 fixed the beginning of the time within which a subcontractor was required to file his contract in the office of the county clerk and to give notice to the owner, as a condition to the establishment of his claim against the owner and to the fixing of his lien, as the date that the "indebtedness accrues." Art. 5453, as amended in 1961, still fixes the beginning of the time within which a subcontractor must file an affidavit claiming a lien in the county clerk's office as the date that the "indebtedness accrues". But that article as so amended now fixes the beginning of the 90 day period during which a subcontractor must give notice of claim to the owner (or to the bonding company, as here) as "the tenth (10th) day of the month next following each month in which claimant's labor was done or performed in whole or in part or his material delivered in whole or in part."

■ The lift, as delivered to the jobsite in September, 1966, was inoperable on the electricity supply available at the building where it was to be installed. It did not become operable and ready for installation until the arrival of the transformer in November of 1966. If the delivery, in September, was such a delivery "in whole or in part" of the lift as contemplated by the above quoted language from art. 5453 Industrial's giving of notice to Fidelity on February 14 of 1967 was too late and the claim was not enforceable against Fidelity. If delivery did not occur until November of 1966 upon the arrival of the transformer which made the lift operable and ready for installation Industrial's notice was timely filed.

It is the contention of the appellee that, despite the quoted language of art. 5453, the 90 day period within which to give notice to the bonding company did not begin until the tenth day of the month following the month in which the original contractor incurred indebtedness for the transformer. The trial court found on sufficient evidence that the original contractor did not so incur such debt until November of 1966. This contention is supported by a comparison between the concepts upon which art. 5160, the McGregor Act, historically have been based, and the concepts upon which art. 5452–5472d, the Hardeman Act, historically have been based. The McGregor Act relates to contracts to build for the State or one of its subdivisions and the Hardeman Act relates to contracts to build for private owners. The appellee points out that historically the time within which to give notice required by the McGregor Act was tied to the date of delivery of materials while the time within which to give notice required by the Hardeman Act was tied to the accrual of indebtedness. It is contended that the Legislature in amending art. 5453 in 1961 did not intend to depart from the historical concept of tying the date of notice to the accrual of indebtedness.

Paragraph 2 of art. 5453, which provides for notices to be given by subcontractors, does make reference to the debt from which the claim arises. It recites at 2, par. b(1) "Where the claim consists of a lien claim arising from a debt *incurred* by a subcontractor, the claimant shall give written notice of the *unpaid balance* of such claim . . ." to the original contractor and to the owner within specified

times. It recites at 2, par. b(2) "Where the claim consists of a lien claim arising from a *debt incurred* by the original contractor . . ." notice shall be given to the owner as provided in 2, par. b(1). We are of the opinion, however, that those references to "debt incurred" are for the purpose of identifying the class of claimant referred to rather than for the purpose of tying the notice date to the accrual of indebtedness. The reference to the "unpaid balance" of the claim does not necessarily mean an unpaid balance that is due either at the date of the beginning of the 90 day period or at the date of the giving of the notice. In fixing the time within which to file the affidavit of claim in the county clerk's office art. 5453 clearly fixes the beginning of such period as the date of the accrual of indebtedness. It does not seem reasonable that if it had intended to fix the beginning of the period during which to give notice to a surety or the owner at the date of such accrual the Legislature would have used such indirect language to do so. Rather it seems that the Legislature intended to depart from the earlier provisions fixing the debt accrual date as the beginning of the time within which to give notice and adopt the delivery of material date as in art. 5160.

The briefs filed herein do not cite any cases construing the language above quoted from art. 5453 fixing the date within which a subcontractor claimant must give notice to an owner. Cases are cited, however, construing the comparable language used in art. 5160. For the reasons stated above we are of the opinion that such cases are in point as to this case. On the basis of those authorities we hold that the delivery of the lift to the jobsite in September, 1966, was such a delivery that fixed the beginning of the 90 day period within which to give Fidelity notice of Industrial's claim for its purchase price at October 10, 1966. Thus the notice given on February 14, 1967, was not given within the required time. The claim for the purchase price for the lift was not enforceable against Fidelity.

A case construing the relevant language of art. 5160 and involving facts closely similar to the facts of this case is Pacific Indemnity Co. v. Bowles & Edens Supply Co., 290 S.W.2d 353 (Tex.Civ.App.-Dallas 1956, writ ref'd n. r. e.). In that case the original contract was for the construction of a swimming pool in a public park. A subcontractor agreed to furnish and install certain material, including electric motors. After the material was delivered it was discovered that two of the motors did not meet specifications. The two motors were removed but the remaining material remained at the jobsite in crates. Later, replacement motors were delivered and the material was assembled and installed. It was held that the 90 day period within which the subcontractor was required to file its claim began at the date of the first delivery of material despite the fact that such material was not useable until the later delivery of the replacement motors. Other cases similarly construing the language of art. 5160 are Aetna Casualty & Surety Co. v. Hawn Lumber Co., 128 Tex. 296, 97 S.W.2d 460 (1936) and National Surety Co. v. United Brick & Tile Co., 71 S.W.2d 937 (Tex.Civ.App.-Amarillo 1934, writ dism'd).

At the date when the claims which were the subjects of those cited cases arose the language of art. 5160 provided that the limitation period began on "the date of the delivery of said material." Both that statute and art. 5453 now have been amended so as to use language providing that such limitation period shall begin on the 10th day of the month next following the month in which the material was delivered "in whole or in part." Those amendments, relating the notice date to even a partial delivery, are evidentiary of a legislative intention that delivery, and not accrual of a debt, is controlling in determining the beginning of the limitation period.

■ An alternative theory of recovery pleaded by Industrial is based upon a claimed contract obliging Fidelity to pay the claim asserted. After Fidelity received

notice of Industrial's claim Fidelity furnished Industrial with a printed form called a "Proof of Claim" form. It had on it blank spaces to be filled in identifying the claimant and describing the basis of the claim and the amount thereof. Such form was filled out by Industrial, was verified and was delivered to Fidelity. It included the following language:

"6. That this affidavit is made in support of the above described claim against, and for the purpose of inducing, FIDELITY AND DEPOSIT COMPANY OF MARYLAND, as surety for said Contractor, to pay said claim under the bond which it executed as surety for said Contractor.

7. That as a further inducement to FIDELITY AND DEPOSIT COMPANY OF MARYLAND for making payment at this time, Claimant hereby agrees that all guarantees and warranties required under the terms of the aforesaid contract pertaining to the work, labor and materials furnished by the undersigned shall remain in full force and effect in accordance with their terms which, however, shall not be extended nor enlarged hereby."

Appellee argues that this instrument constitutes an agreement by Fidelity to pay its claim and that its agreement that the warranties on the material should remain in effect constitutes consideration for Fidelity's said agreement. The trial court made findings of fact and conclusions of law consistent with appellee's such contentions.

If the instrument is to be construed as an agreement by Fidelity to pay the claim in question such agreement must arise from the language of the instrument itself. There was no oral testimony either as to the intention of the parties in executing, delivering and accepting the instrument or supplying any omissions as to the elements of a contract. The instrument on its face is merely a unilateral statement by Industrial. There is no language by which Fidelity either agrees to pay the questioned claim or offers to do so if Industrial will affirm its warranties. The basic elements of a contract are not shown. Appellant's points of error with reference to appellee's claim of contract are sustained.

Fidelity agreed that Industrial's claim for $475.00 for the installation of the lift was valid and tendered that amount. It was stipulated in the trial court that Industrial was entitled to judgment for $475.00. For the reasons stated, the judgment of the trial court is reversed and judgment here rendered for Industrial for $475.00 with interest at the rate of 6% per annum from December 10, 1966.