AMERICAN AMICABLE LIFE INSURANCE COMPANY, Appellant,

v.

JAY'S AIR CONDITIONING AND HEATING, INC., Appellee.

No. 5517.

Court of Civil Appeals of Texas, Waco.

March 11, 1976.

Rehearing Denied April 8, 1976.

DeLange, Hudspeth, Pitman & Katz, Eugene Pitman, Houston, Ferguson & Ferguson, Russell G. Ferguson, Austin, for appellant.

Daugherty, Kuperman & Golden, David I. Kuperman and James O. Guleke, II, Austin, for appellee.

HALL, Justice.

Under contract dated October 24, 1972, with a partnership known as S.S.&F. Enterprises (hereinafter "S.S.&F."), Jay's Air Conditioning And Heating, Inc., the appellee, sold and installed air conditioning and heating units in apartments being constructed by S.S.&F. on several tracts of land in the City of Austin owned by S.S. &F., including 56 units and 40 units, respectively, on the two tracts in question.

S.S.&F. had previously arranged for interim financing of the construction with the Greenway Bank & Trust Of Houston, and executed its promissory note and deed of trust lien on the two tracts in favor of the bank, on August 28, 1972. The note was later assigned to the appellant, American-Amicable Life Insurance Company, by the Bank in December, 1973; and, on December 17, 1973, a renewal note and another deed of trust on the two tracts securing the note were executed by S.S.&F. in favor of the appellant. Subsequently, this lien was foreclosed by the appellant, and it purchased the two tracts at a public sale held by the trustee on October 1, 1974.

Jay's brought this suit against S.S.&F. and the partners, jointly and severally, to recover the balance allegedly due to Jay's under its contract, for foreclosure of a mechanic's and materialman's lien, and for an order of sale on certain elements of the air conditioning units which it asserted did not become a permanent part of the improvements and were removable without material injury to the realty. Jay's also joined the appellant as a defendant, seeking in effect, a declaration that its mechanic's and materialman's lien is superior to the appellant's interest in the property and a foreclosure of the lien on the two tracts.

After a trial without a jury, judgment was rendered awarding Jay's a recovery against S.S.&F. and the individual partners for $8,620 on the contract, plus $3,000 attorney's fees; foreclosing a mechanic's and materialmen's lien in favor of Jay's on the two tracts in question upon which the 96 apartments are constructed; decreeing an order of sale in Jay's favor for the removal and sale of the compressors and air-handling units in each of the air conditioning units installed by it in the apartments; and a recovery in favor of the appellant on its pleadings against S.S.&F. and the partners for any amount that the appellant "may be obligated to pay in behalf of [S.S.&F.] to prevent foreclosure of its property."

S.S.&F. did not appeal.

 Article XVI, Sec. 37, Vernon's Tex.Const., gives mechanics and materialmen of every class a lien on buildings and articles on which they labor or for which they furnish materials, and specifies that the Legislature shall provide by law for the speedy and efficient enforcement of the lien. The lien granted therein is self-executing as between the owner and the laborers and materialmen who contract directly with the owner, without need of any statutory provisions. *Strang v. Pray,* 89 Tex. 525, 35 S.W. 1054, 1056 (1896); *Hayek v. Western Steel Co.* (Tex.Sup., 1972), 478 S.W.2d 786, 789. Pursuant to the mandate set forth therein, the Legislature has enacted Articles 5452, et seq., Vernon's Ann.Tex.Civ.St., prescribing the lien, and providing for the securing, priority, and enforcement of it. Sec. 1 of Article 5459, dealing with the priority and enforcement of the lien, has been interpreted to mean that the lien is superior to a prior recorded deed of trust lien where the improvements made can be removed without material injury to the land and preexisting improvements, or to the improvements removed. *First National Bank In Dallas v. Whirlpool Corp.* (Tex. Sup., 1975), 517 S.W.2d 262, 269.

The appellant asserts that the evidence conclusively shows that Jay's claims under its contract with S.S.&F. were paid in full from a particular source; or that, alternatively, the evidence is factually insufficient to overcome the appellant's pleadings and proof of such payment. For these reasons, it says that the judgment of foreclosure of a mechanic's and materialman's lien in favor of Jay's on the tracts in question is erroneous. We overrule these contentions.

On the two tracts in question, S.S.&F. constructed the "Patton Lane Apartments" and the "Rundberg II" apartments. The Greenway Bank provided interim financing for four of S.S.&F.'s projects, and these included the Patton Lane Apartments and the Rundberg II Apartments. There is evidence that Greenway Bank funded each project separately except Patton Lane and Rundberg II; that Patton Lane and Rundberg II were jointly funded out of S.S.&F.'s single account number 126–748 with the bank which S.S.&F. and the bank designated the "Patton Lane Apartments" account; that more than $8,620 from this account was paid by S.S.&F. to Jay's for work on apartments other than Patton Lane and Rundberg II; that Jay's president knew that the Greenway Bank was S.S.&F.'s source of funds for the projects; and that Jay's simply followed the "first in, first out" rule with payments received from S.S.&F. and applied all such payments to S.S.&F.'s oldest existing debt. There is no evidence that Jay's was familiar with any arrangements between S.S.&F. and Greenway Bank for payments on the apartment construction; or that Jay's ever agreed with the Greenway Bank or S.S.&F. or was

ever instructed by S.S.&F. or anyone to apply the payments to a designated project. Additionally, there is evidence that until the early part of 1973, S.S.&F. paid Jay's the exact amount of each draw Jay's requested for its work; that at least $10,000 was paid to Jay's with a check drawn on the Patton Lane Account with the Greenway Bank before work ever began on the Patton Lane Apartments; that, beginning in February, 1973, S.S.&F. discontinued this practice and thereafter made payments from time to time which did not correspond to any particular draw and for amounts less than what was owed to Jay's on all of the various projects; that Jay's applied the payments to the oldest debt; that on May 30, 1973, Jay's sent its itemized statement for $21,811.00 to S.S.&F., being the total amount then due it on the various projects shown on the statement which included named projects other than Patton Lane and Northgate II; that S.S.&F. paid Jay's this exact amount on June 13, 1973, with a check drawn on the Patton Lane Apartment's account; that this payment brought S.S.&F. to an exactly current status, and that the only remaining uncompleted projects were the two projects upon which this suit is based; that, thereafter, S.S.&F. continued its irregular pattern of payments with Jay's applying the payments to the oldest debt; and that this suit finally resulted, on Jay's assertion that S.S.&F. failed to make full payment on the last two projects.

■ This evidence defeats the appellant's contention that the record establishes as a matter of law that Jay's claims in this lawsuit were paid in full from a particular source. Absent directions from S.S.&F., or some other agreement with S.S.&F. or with Greenway Bank binding upon S.S.&F., Jay's was privileged to apply the random payments received from S.S.&F. to the oldest unpaid portion of S.S.&F.'s account, unless to do so was inequitable or unfair to S.S.&F. *Aetna Casualty & Surety Co. v. Hawn Lumber Co.,* 128 Tex. 296, 97 S.W.2d 460, 465 (1936), *Prowell v. Berry-Barnett Grocery Company,* 462 S.W.2d 53, 54 (Tex. Civ.App.—Waco, 1971, writ ref.). It is sig-

nificant that S.S.&F. has never complained about this application. Additionally, Jay's was not privileged to apply any payment by S.S.&F. from any source to contracts or draws not yet due, in the absence of a special agreement to that effect binding on S.S.&F. 44 Tex.Jur.2d 695–696, Payments, § 40.

It is out further view from a study of the entire record that the findings contrary to the appellant's contentions of full payment from a particular source are not against the great weight and preponderance of the evidence.

■ In § 1 of Article 5472e, Vernon's Ann.Tex.Civ.St., the Legislature declares all funds paid to contractors and subcontractors under a construction contract for the improvement of specific real property, and all funds borrowed by a contractor, subcontractor, or owner for the purpose of improving such real property, which are secured in whole or in part by a lien on the specific property to be improved, to be "Trust Funds for the benefit of the artisans, laborers, mechanics, contractors, subcontractors or materialmen who may labor ׃ furnish labor or material for" the improvements; and constitutes the contractor, subcontractor, or owner receiving such funds "a Trustee" thereof. Contrary to the appellant's position, this statute did not make the funds received by Jay's from S.S.&F. "trust funds" for the benefit of the appellant, and Jay's was not a trustee thereof for that purpose. The purpose of this statute is to protect materialmen and laborers, contractors and subcontractors; it does not create a trust for the benefit of interim or permanent lenders. Under our record, article 5472e actually gives Jay's a preferred status over the appellant to the money borrowed by S.S.&F. from Greenway Bank and placed in the account in question. *See, Panhandle Bank & Trust Co. v. Graybar Elec. Co., Inc.,* 492 S.W.2d 76, 81 (Tex.Civ.App.—Ama., 1973, writ ref., n. r. e.).

By way of requests for admissions directed only to S.S.&F., Jay's made proof on the trial of every element of its cause of action

against S.S.&F. Complete proof of this cause of action was made again by Jay's in much greater detail without use of the admissions while its president was testifying. Accordingly, the appellant's complaint that S.S.&F.'s admissions are not binding against the appellant is immaterial.

The appellant brings forward other points and contentions. Some are immaterial to the rights of the parties on this appeal. The others are without merit under the record. All are overruled.

The judgment is affirmed.